<u>FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RANCOCAS VALLEY REGIONAL HIGH SCHOOL BOARD OF EDUCATION,**      **Plaintiff,**      v.  **M.R. o/n/o A.R., and the STATE OF NEW JERSEY**      **Defendant.** | CIVIL ACTION NO. 04-1136 (SSB)  OPINION REGARDING NEW JERSEY'S MOTION TO DISMISS PURSUANT TO 12(B)(1) and 12(B)(6) |

<u>APPEARANCES</u>:

James F. Schwerin, Esq.
PARKER McCAY & CRISCUOLO P.A.
1009 Lenox Drive
Building Four East, Suite 102A
Lawrenceville, NJ 08648
FOR THE PLAINTIFF

Michael C. Walters, Esq.
Deputy Attorney General
Division of Law
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625
FOR THE DEFENDANT

     **BROTMAN, DISTRICT JUDGE**

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

     This matter, essentially a monetary dispute, comes before the Court to review the decision of an Administrative Law Judge ("ALJ"). ALJ Douglas H. Hurd decided that Rancocas Valley Board of Education ("Rancocas Valley") had not provided A.R. with a free appropriate public education ("FAPE"). In his final decision dated January 16, 2004 ALJ Hurd ordered Rancocas Valley to pay for A.R.'s placement in a twelve-month program at Devereaux. (Br. at 3). The parties agree that, as a child with developmental disabilities, A.R. is entitled to receive a FAPE under the Individuals with Disabilities Education Act ("IDEA")[1] and is entitled to receive special services under the Developmentally Disabled Rights Act ("DDRA")[2]. The disagreement concerns whether Rancocas Valley or New Jersey ought to pay for A.R.'s placement at Devereaux.

     Seeking to avoid paying for what it qualifies as a "residential treatment center" and not a school, Rancocas Valley filed a two count complaint in this Court on March 8, 2004. The Complaint named the parents of A.R.[3] and the State of New Jersey as defendants. The first count seeks reversal of the ALJ's Final Decision and Order under 20 U.S.C. § 1415 and N.J.A.C. 1:6A-18.3. The second count, on the other hand, asks for much more.

     Through the second Count of the Complaint Rancocas Valley asks for an order: a) reversing the Hurd decision; b) declaring New Jersey instead of Rancocas Valley responsible for the cost of placing A.R. at Devereux; c) finding that the Vineland Development Center ("VDC")

---

[1] The IDEA is codified at 20 U.S.C. § 1400, *et. seq*.

[2] The DDRA is codified in N.J.S.A. 30:6D-1, *et. seq*.

[3] The parties refer to the parents of A.R. as M.R. (Compl. at ¶ 2)

is an appropriate placement for A.R.; d) directing the New Jersey Department of Education ("NJDOE") to promulgate an Interagency Agreement ("IA"); and e) providing for the Division of Developmental Disabilities ("DDD") to be made a party to the due process proceeding before the NJDOE.

In response to the Complaint, New Jersey filed a Motion to Dismiss under FED. R. OF CIV. PROC. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. In its thirty-seven page Motion to Dismiss, New Jersey attacks the seven page Complaint on six grounds. Although the Court recounts several of the arguments with greater specificity below, New Jersey's six independent bases of attack can be summarized as follows.

First, defendant New Jersey argues that Count II should be dismissed for lack of subject matter jurisdiction. Second, New Jersey contends that Rancocas Valley has no private cause of action against the state under the IDEA. Third, the state argues that the IDEA does not require the NJDOE to promulgate an IA with the DDD. Fourth, New Jersey claims that Rancocas Valley lacks standing to maintain the cause of action. Fifth, the state alleges that the DDD has not waived its sovereign immunity since it does not participate in the IDEA. Sixth, defendant alleges the Complaint should be dismissed because Rancocas Valley failed to exhaust administrative remedies.[4]

Plaintiff opposes the Motion to Dismiss on several distinct grounds. Where relevant, these arguments will be specifically addressed. In reaching its decision, the Court has considered all of the arguments raised by the parties, including those made during the oral arguments held on

---

[4] New Jersey specifically alleges that pursuant to N.J.S.A. 18A:7F-19 Rancocas Valley must first petition the Commissioner of Education for relief from the cost of A.R.'s education.

May 24, 2005.

## II.   THE COURT'S POWER AND ROLE

### A.   Subject Matter Jurisdiction

Two provisions found in § 1415(i)(2) create this court's jurisdiction and direct the manner in which the Court conducts its review:

> (A) Any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.
>
> * * * *
>
> (C) Additional requirements. In any action brought under this paragraph, the court--
> >    (i) shall receive the records of the administrative proceedings;
> >    (ii) shall hear additional evidence at the request of a party; and
> >    (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2). To summarize, three principles from the statute shape this Court's review. First, "any party aggrieved" may bring an action on appeal to this Court so long as the action relates "to the complaint presented pursuant" to § 1415; second, the Court must base its decision on review on the "preponderance of the evidence"; and, third, the Court grants relief it deems appropriate.

One of defendant's grounds for its motion to dismiss is that the Court lacks subject matter jurisdiction with respect to the second count of the Complaint. Defendant New Jersey claims that Rancocas Valley cannot challenge the lack of an interagency agreement in a district court of the United States. The Court disagrees. The language creating subject matter jurisdiction is both explicit and broad. For example, § 1415(i)(2)(a) grants jurisdiction "without regard to amount in

controversy", the Court has discretion to "grant such relief as the court determines is appropriate," and any party aggrieved may bring a civil action. The statutory language therefore manifests an unmistakable intent to broadly define this Court's jurisdiction with respect to these kinds of cases. In this way, the grant of jurisdiction found within § 1415(i)(2)(a) empowers this Court to exercise jurisdiction.

  **B.** **Motion to Dismiss Standard**

When considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the Plaintiff. *ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994); *Schrob v. Catterson,* 948 F.3d 1402, 1405 (3d Cir. 1991). The Court cannot dismiss Plaintiff's Complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (citations omitted); *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir. 1984).

**III.** **DISCUSSION AND ANALYSIS**

As Judge Orlofsky noted, the IDEA "is not a well-drafted law." *S.C. v. Deptford Bd. of Educ*. 213 F. Supp. 2d 452, 454 (D.N.J. 2003). Even "after thirty years and much congressional tinkering, the text of the IDEA still leaves courts at a loss to answer many basic questions about how it is to be enforced, such as who may sue whom, for what, and in what court." *Id,* In one way, Plaintiff's Complaint highlights some of the systematic deficiencies in how the IDEA functions within the State of New Jersey. Moreover, Plaintiff's allegations demonstrate that these

deficiencies can be attributed to both the IDEA statute itself and New Jersey's particular approach to meeting the Act's requirements.

After considering and evaluating all of the parties' arguments, the Court has become totally convinced of two principles: (1) that both the IDEA statute and the administrative scheme New Jersey utilizes to implement the IDEA could be overhauled and improved; and (2) that a United States District Court is an inappropriate instrument to effect the changes Plaintiff seeks. While the first principle has little impact on the resolution of the instant controversy, the second emerges directly from the Court's holding that a Local Educational Agency ("LEA"), such as Rancocas Valley has no private right of action. Concluding that Rancocas Valley does not have a private right of action, the Court must acknowledge that the need for change provides neither the power nor the authority for this Court to change the IDEA or how New Jersey implements it.

### A.     The Private Right of Action Requirement

The instant motion revolves around the determination of whether a LEA has either an express or an implied private right of action. The question of whether a statute affords a party a cause of action is essentially a matter of statutory construction. See *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). In determining whether an express or an implied private right of action exists, the Court's "task is limited solely to determining whether Congress intended to create the private right of action..." *Id.* As recently as 2001, the Supreme Court clarified that, "[l]ike substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The Court's analysis proceeds in four steps. First, the Court reviews the arguments of the parties; second, the Court looks to the language of the statute itself; third, the Court considers whether an express

right of action exists; and fourth, the Court inquires whether an implied right of action exists.

*1. The Parties' Arguments*

The parties cite a series of cases, many of which arose within the District of New Jersey, in support of their respective positions. Plaintiff cites *Deptford.* for the proposition that the IDEA provides a Board of Education with an express private right of action. Plaintiff would have the Court hold, as Judge Orlfosky did in the *Depford* case, that the IDEA creates an express right of action in favor of LEAs when LEAs are parties aggrieved by the ALJ's findings.

Defendant cites to two cases as having better rules. First, Defendants cite to *Asbury Park Bd. Of Educ. v. Hope Academy Charter Sch.*, 278 F. Supp. 2d 417 (D.N.J. 2003) as a better rule. In *Asbury Park*, Judge Cooper held that the IDEA did "not expressly or implicitly afford the school district a private right of action." *Id. at 420.* The second case Defendants invoke as support is an unpublished opinion written by Judge Chesler. *Lawrence Township Bd. of Educ. v. New Jersey* was consistent with *Asbury Park* but seemingly inconsistent with *Deptford.* In *Lawrence Township*, Judge Chesler held that the Lawrence Township Board of Education had neither an express nor an implied private cause of action. The Third Circuit recently upheld Judge Chesler's opinion, as will be discussed below.

In response to Plaintiff's arguments, New Jersey also emphasizes that many cases Plaintiff cites involved parents who brought cases against the SEA. Focusing on this distinction, defendant argues that those cases allowing a private cause of action for the parents differ significantly from this case, which involves the LEA trying to assert a private cause of action on its own behalf. After evaluating all of the cases and arguments of the parties the Court agrees with defendant, applies the recent Third Circuit Opinion in *Lawrence Township*, and specifically

right of action exists; and fourth, the Court inquires whether an implied right of action exists.

*1. The Parties' Arguments*

The parties cite a series of cases, many of which arose within the District of New Jersey, in support of their respective positions. Plaintiff cites *Deptford.* for the proposition that the IDEA provides a Board of Education with an express private right of action. Plaintiff would have the Court hold, as Judge Orlfosky did in the *Depford* case, that the IDEA creates an express right of action in favor of LEAs when LEAs are parties aggrieved by the ALJ's findings.

Defendant cites to two cases as having better rules. First, Defendants cite to *Asbury Park Bd. Of Educ. v. Hope Academy Charter Sch.*, 278 F. Supp. 2d 417 (D.N.J. 2003) as a better rule. In *Asbury Park*, Judge Cooper held that the IDEA did "not expressly or implicitly afford the school district a private right of action." *Id. at 420.* The second case Defendants invoke as support is an unpublished opinion written by Judge Chesler. *Lawrence Township Bd. of Educ. v. New Jersey* was consistent with *Asbury Park* but seemingly inconsistent with *Deptford.* In *Lawrence Township*, Judge Chesler held that the Lawrence Township Board of Education had neither an express nor an implied private cause of action. The Third Circuit recently upheld Judge Chesler's opinion, as will be discussed below.

In response to Plaintiff's arguments, New Jersey also emphasizes that many cases Plaintiff cites involved parents who brought cases against the SEA. Focusing on this distinction, defendant argues that those cases allowing a private cause of action for the parents differ significantly from this case, which involves the LEA trying to assert a private cause of action on its own behalf. After evaluating all of the cases and arguments of the parties the Court agrees with defendant, applies the recent Third Circuit Opinion in *Lawrence Township*, and specifically

rejects *S.C. v. Deptford*. Next, the Court discusses the text of the IDEA itself.

   *2. The Textual Requirements of § 1415*

Section 1415 of the IDEA ("§ 1415") grants parents "an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by state law..." 20 U.S.C. § 1415(f). Congress protected the interests of both "children with disabilities and their parents" by creating a series of procedural safeguards. Parents can invoke the procedural devices listed in § 1415 to enforce their child's right to a Free Appropriate Public Education ("FAPE").

The express language of the IDEA exists to guarantee that children with disabilities receive a Free Appropriate Education. In order to effectuate this express goal, Congress created a federal private right of action for both children with disabilities and their parents. Consequently, either the parents of children with disabilities or the children themselves can enforce the child's federal right to a FAPE.

   *3. Express Right of Action*

In its recent opinion affirming Judge Chesler, the Third Circuit rejected and overruled *Deptford* and held that the IDEA provides neither an express nor an implied right of action to an LEA. *Lawrence Twp. Bd. of Educ. v. N.J.* 2005 U.S. App. LEXIS 15823 (3d Cir. Aug. 2, 2005). Following this opinion and for the additional reasons discussed below, the Court holds that Rancocas Valley has neither an express nor an implied private right of action. Each will be discussed separately.

The Court finds that the IDEA does not provide an express right of action in favor of an LEA for two reasons. First, the Court agrees with the Third Circuit's analysis and holdings in

8

*Lawrence Township Board of Education,* and holds that it applies equally to this case. Just as the *Lawrence* court held that there was not an express right of action, this Court finds that there is no express right of action in this case either.

In addition to the Third Circuit's analysis, the Court finds that the structure of the IDEA supports the conclusion that Rancocas Valley has no express right of action. The express language of the IDEA exists to guarantee that children with disabilities receive a Free Appropriate Education. In order to effectuate this express goal, Congress created a federal private right of action for both parents of children with disabilities and the children themselves.

Section 1415(a) begins by imposing obligations on SEAs and LEAs, directing that any agency receiving "assistance under this part....shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a)(1997).[5] In addition, Section 1415(i)(2) provides that "any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section..." 20 U.S.C. § 1415(i)(2) (1997).

Synthesizing the above-reference provisions, Rancocas Valley does not have an express right of action under the IDEA. In guaranteeing the "provision of a free appropriate public education", Section 1415(a) connects the right to children with disabilities and their parents. In other words, when Congress created the federal right to a FAPE it vested the right in children

---

[5] The Court has used the provisions of the IDEA in effect at the filing of this lawsuit, not the amendments made effective July 1, 2005.

with disabilities and gave the parents procedural devices to enforce their child's rights. This structure simply does not, at the same time, create a federal right in a LEA.

Moreover, contrary to plaintiff's assertion, the "any party aggrieved" provision does not expressly create a right. On the contrary, that subsection merely allows a reviewing state or federal court to ensure that the ALJ did not misinterpret or exceed the boundaries of the child's right to a FAPE which is found within the IDEA. For all of these reasons, Rancocas Valley does not have an express right of action, just as the Third Circuit found in the *Lawrence* case. Having so decided, the Court considers whether the IDEA implied a right of action.

2.  *Implied Rights of Action*

As was true of the express right of action inquiry, the Third Circuit has resolved this motion with its holding in *Lawrence*. There, the Third Circuit held that the LEA had no implied private right of action. *Lawrence* at 6. Just like the *Lawrence* case, this matter is not about the "child's educational needs, but rather the Township's fiscal ones." *Id.* Moreover, the Third Circuit's holding is particularly compelling to this Court as an analysis of congressional intent that, by its nature, does not change merely because this case has some slight factual variances.

IV. **CONCLUSION**

Following the Third Circuit's recent holding in *Lawrence* and for the other reasons discussed in this opinion, the Court holds that Rancocas Valley does not have a private right of action to sue the State of New Jersey for compensation. Recognizing that both the IDEA and New Jersey's administrative implementation of the statute could be improved does not empower this Court to vitiate congressional intent manifested by the structure and express language of the statute. Finding neither an express nor an implied right of action, the defendant's motion to

dismiss plaintiff's complaint is granted and this case is hereby dismissed.


**Dated:    August 8, 2005**

                                                       /s/
                                        **HON. STANLEY S. BROTMAN**
                                        **UNITED STATES DISTRICT JUDGE**